UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN THURMOND,

                          Plaintiff,

-against-

DR. AVION THOMAS-WALSH, et al.,

                          Defendants.

**MEMORANDUM OPINION AND ORDER**

18-CV-00409 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Kevin Thurmond ("Plaintiff"), formerly incarcerated at Woodbourne Correctional Facility ("Woodbourne") and proceeding *pro se* and *in forma pauperis*, commenced this action on January 8, 2018 against Dr. Avion Thomas-Walsh ("Walsh") and Dr. Frederick Bernstein ("Bernstein," and together, "Defendants"). (Doc. 2, "Compl."). Plaintiff's sole remaining claim is brought under 42 U.S.C. § 1983, alleging that Defendants retaliated against him in violation of the First Amendment by switching his skincare medication in response to him filing a grievance against Walsh.[1]

      Defendants filed their motion for summary judgment on March 18, 2022, after the close of discovery and in accordance with the briefing schedule set by the Court. (Doc. 117; Doc. 118, "Def. Br."; Doc. 119, "Powers Decl."; Doc. 120, "56.1"). Plaintiff, on April 22, 2022, filed a declaration in opposition to Defendants' motion (Doc. 123) alongside his responses to Defendants'

---

[1] On March 29, 2019, Judge Karas, who presided over this action before it was reassigned to me on April 16, 2020, dismissed Plaintiff's Eighth Amendment deliberate indifference claim. (Doc. 26).

1

Rule 56.1 Statement (Doc. 122, "Pltf. 56.1").[2] Defendants' motion for summary judgment was fully submitted upon the filing of their reply brief on April 29, 2022. (Doc. 124, "Reply").

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (i) the Complaint; (ii) Defendant's Rule 56.1 Statement; (iii) Plaintiff's Rule 56.1 Responses and the exhibits annexed thereto;[3] and (iv) the Declaration of Janice Powers along with the exhibits annexed thereto (Doc. 117, "Powers Decl."), which includes, *inter alia*: Defendants' sworn affidavits, drug labels for Vistaril and Atarax, Plaintiff's medical records, decisions on Plaintiff's grievances, and Plaintiff's deposition transcript.

Plaintiff's first relevant visit with Walsh occurred on December 24, 2013 while he was incarcerated at Green Haven Correctional Facility ("Green Haven"). (Pltf. 56.1 at 23). Walsh, during that visit, prescribed Plaintiff Vistaril for "often and constant" itching as well as hives. (*Id.*). Walsh also ordered several tests on Plaintiff's blood samples. (*Id.*). Vistaril is used to treat various skin conditions as well as anxiety and physicians are recommended to periodically reassess its usefulness in individual patients. (Powers Decl., Ex. A-2). Potential adverse reactions include hallucinations and the worsening of skin conditions. (*Id.*).

---

[2] Statements made by Defendant that are supported by admissible evidence and not refuted by Plaintiff will be deemed admitted. *See Mirza v. Garnet Health*, No. 20-CV-00556, 2022 WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022). The Court will consider Plaintiff's responses to refute Defendants' statements of fact only to the extent that they cite to admissible evidence. *See Wilson v. Annucci*, No. 18-CV-00391, 2020 WL 1979210, at *3 (N.D.N.Y. Apr. 23, 2020) (noting that *pro se* plaintiffs opposing a motion for summary judgment were "required to submit admissible evidence"), *adopted by* 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[3] Pagination to those exhibits corresponds to that generated by ECF.

The tests ordered by Walsh were administered on January 14, 2014, and Plaintiff filed a grievance against Walsh on February 24, 2014, alleging that a blood test was taken without his consent. (Powers Decl., Ex. D).

Walsh saw Plaintiff on three other occasions (March 24, 2014, April 3, 2014, and May 8, 2014) before switching Plaintiff's prescription for his itching to Atarax on May 21, 2014. (Pltf. 56.1 at 21; 56.1 ¶ 3). Atarax is used to treat nearly identical conditions as Vistaril but has only mild potential adverse reactions and does not create the risk of worsening skin conditions or hallucinations. (Powers Decl., Ex. A-2). Moreover, although disputed by Plaintiff, Walsh submits that "in the medical community, there is an understanding that Vistaril is used for anxiety whereas Atarax is used for the physical symptoms of itching because it lacks the potential for unwanted side effects of hallucinations and a return of the exact hives one is trying to be rid of." (Powers Decl., Ex. A).

Plaintiff visited Walsh again on May 29, 2014, complaining that Atarax was not working and requesting to be put back on Vistaril. (56.1 ¶ 4). Walsh declined to switch him back. (*Id.* ¶¶ 5-6). Plaintiff's medical records indicate that he consistently failed to take his Atarax prescription. (Powers Decl, Ex. B). Plaintiff filed another grievance against Walsh on June 5, 2014, relating to the switch in medications. (Powers Decl., Ex. E).

Bernstein, Walsh's supervisor, wrote to Plaintiff on June 12, 2014, informing him that his prescription for Atarax was in fact the "correct medication." (Powers. Decl., Ex. C-1). Plaintiff went to see Walsh for the final time on July 18, 2014, before refusing to consult with her again. (56.1 ¶ 10). Bernstein attended that visit. (Powers Decl., Ex. F).

Plaintiff thereafter saw only different medical providers,[4] including a dermatologist to whom Walsh had referred him. (56.1 ¶¶ 18-20).

This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*,

---

[4] Plaintiff claims in his opposition brief that Walsh prescribed him Vistaril again in October 2015 after he was transferred to Woodbourne. (Opp. Br. at 1). That assertion, however, is not supported by the record and is flatly contradicted by Plaintiff's deposition testimony. (Powers Decl., Ex. F at 33:03-04 ("I wasn't seeing Thomas-Walsh anymore.")). There is no indication that Walsh ever worked at Woodbourne and, indeed, Plaintiff's January 8, 2018 Complaint lists Walsh's last known address as Green Haven. (Compl. at 3).

248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is

appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[p]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff's claim is brought under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204,

6

2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff's sole remaining claim under § 1983 is a retaliation claim under the First Amendment. (*See generally* Compl.).

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection[,] between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[ ] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted). Moreover, "[t]o survive summary judgment [on a retaliation claim], the prisoner must do more. He must adduce sufficient evidence to allow a reasonable jury to infer these criteria

are met from the totality of the circumstances." *Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 661 (E.D.N.Y. 2021) (citing *Gayle v. Gonyea*, 313 F.3d 677, 682-83 (2d Cir. 2002)).

Defendants argue that there is no causal connection between Plaintiff's speech and Defendants' conduct for three reasons: (i) Plaintiff's protected speech was determined to be false; (ii) Defendants' adverse action was motivated by legitimate reasons; and (iii) the amount of time between Plaintiff's speech and Defendants' conduct does not establish temporal proximity. (*Id.* at 7-15). Defendants, in addition to contesting causal connection, argue that Bernstein was not personally involved in the alleged constitutional violation. The Court will address Defendants' four arguments *seriatim*.[5]

### I. Falsity of Plaintiff's Grievance

With respect to Defendants' first argument that false speech cannot, as a matter of law, be causally connected to an adverse action, Defendants rely on a single retaliation case for this proposition, *Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650 (E.D.N.Y. 2021). (Def. Br. at 7-9).[6] The Plaintiff's protected speech in *Jones* consisted of a grievance he filed before the defendant allegedly falsified his medical record, filed a disciplinary report against the plaintiff, and withheld his medication. The plaintiff then filed a separate grievance, days later, against the same defendant, relating to the withheld medication. That second grievance turned out to be false. The *Jones* court relied on the falsity of plaintiff's second grievance in finding that the defendant had not retaliated

---

[5] Defendants also argue in their reply brief that Plaintiff failed to prove a retaliatory motive and that Plaintiff's alleged injuries are unsupported. (Reply at 2-6; 9-14). Those arguments are not going to be considered and are deemed waived because the *pro se* Plaintiff had no opportunity to respond to them (Defendants *reference* a lack of retaliatory motive in their opening brief but provide no analysis thereto and instead focus on legitimate justification). *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n. 13 (2d Cir.2010) ("Issues raised for the first time in a reply brief are generally deemed waived."). Nevertheless, the Court need not consider those arguments in light of its determinations herein.

[6] The Court declines Defendants' invitation to analogize cases on falsity in other First Amendment contexts—such as commercial speech—to retaliation.

against him. In other words, the adverse action was taken *prior to* the false speech, and thus there could exist no causal connection between the two. The grievance in this case that turned out to be false, related to blood testing, is the same protected speech upon which Plaintiff's case is built and occurred prior to the adverse action. The falsity of the grievance then aside, Defendants very well could have retaliated against Plaintiff even if they knew the grievance was false because the grievance was filed before the alleged retaliation occurred.

> II. Legitimate Justification for Defendants' Action

With respect to Defendants' second argument, the Court agrees that the legitimate reasons for Defendants' "adverse action"—assuming that the change of Plaintiff's change of prescription was in fact adverse and not helpful to Plaintiff—negate the causal connection element of Plaintiff's claim. When a plaintiff establishes a *prima facie* case of retaliation, a defendant can avoid liability by showing, by a preponderance of the evidence, "that they would have taken action against the plaintiff even in the absence of the protected conduct." *Johnson v. McInerney*, No. 18-CV-00096, 2020 WL 5822162, at *10 (N.D.N.Y. July 13, 2020) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Moreover, if a defendant takes an action "for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Id.* (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see also Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred.").

Evidence in the medical record that a given action by a defendant was warranted based on plaintiff's health is generally sufficient to establish a proper motive. *See, e.g. Johnson*, 2020 WL

9

5822162, at *11-12; *Benitez v. Pecenco*, No. 92-CV-07670, 1995 WL 444352 at *6 (S.D.N.Y. July 27, 1995). As such, a plaintiff's "[c]onclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003).

Here, the medical record demonstrates that Walsh's choice to switch Plaintiff from Vistaril to Atarax was warranted.[7] It is undisputed that Plaintiff suffered from hives and bodily itching. (*See* 56.1 ¶¶ 2, 4). It is also undisputed that Plaintiff was taking Vistaril for almost five months— from December 24, 2013 to May 21, 2014—prior to the change to Atarax. (Powers Decl., Ex. A at 2). Vistaril and Atarax can be used interchangeably to treat Plaintiff's skin conditions except that Vistaril has more serious side effects when used long-term. (56.1 ¶ 11; Powers Decl., Ex. A-2).[8] There is no indication in the record that either Vistaril or Atarax is "stronger" or more effective than the other. Plaintiff was warned of the consequences of the continued use of Vistaril— including that more than four months of use can result in side effects such as "hallucination . . . pruritus, rash, [and] urticaria" (Powers Decl., Ex. A-2 at 4)—on numerous occasions. (*See, e.g.* Powers Decl., Ex. B at 40 (indicating Walsh discussed the side effects of Vistaril with Plaintiff when she initially prescribed it to him); *id*. at 36 (indicating Walsh explained to Plaintiff the

---

[7] To the extent Plaintiff's retaliation claim can be construed to involve both the switch in medication and an allegation that he went 40 days without any medication at all (Compl. at 5), the record is clear that Plaintiff was prescribed Atarax during this time period but simply refused to take it. (Powers Decl., Ex. B. at 119-20). Moreover, Judge Karas already found this issue insufficient to state a claim for deliberate indifference to medical needs. (Doc. 26 at 18-20).

[8] In attempting to dispute this statement of fact, Plaintiff references as evidence the fact section of Judge Karas' opinion in this case denying in part Defendants' motion to dismiss. (*See, e.g.* Opp. Br. at 13). That "factual background" did not set forth set forth findings of fact. Rather, the opinion warns that "[t]he following facts are taken from Plaintiff's Complaint, and Plaintiff's Opposition . . . and are taken as true *for the purpose of resolving the instant motion*." *Thurmond v. Thomas-Walsh*, No. 18-CV-00409, 2019 WL 1429559, at *1 (S.D.N.Y. Mar. 29, 2019) (emphasis added). Plaintiff also cites to his own opposition brief to that motion to dismiss and specifically, its Exhibit 9. (Doc. 23 at 20). That document, however, does not contradict the usages for Vistaril and Atarax as established by Defendants.

differences between Vistaril and Atarax when changing his prescription)). Plaintiff was given Vistaril for more almost five months (December 2013 – May 2014) before the medication was switched. Plaintiff knew all along that Vistaril was only for short-term use.[9] The record is devoid of any evidence—besides Plaintiff's own conclusory statements—to refute that the switch from Vistaril to Atarax was a medically sound choice. Based on the wealth of medical evidence in the record establishing that Walsh's choice to switch Plaintiff's medication was warranted, Defendants have met their burden of proving that "even without [an] improper motivation the alleged retaliatory action would have occurred." *Scott*, 344 F.3d at 288. Accordingly, Plaintiff's retaliation claim fails at the causal connection element and Defendants are entitled to judgment as a matter of law.

    III.    <u>Temporal Proximity</u>

Defendants' third argument, concerning temporal proximity, is equally compelling. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). There is, of course, no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Id.* (internal quotation omitted). However, "more than a few months is generally too long without some other evidence of retaliation." *Wilson v. New York & Presbyterian Hosp.,* No. 21-CV-01971, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022); *see also, e.g. Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir. 1990) (three months too long to suggest a causal relationship between complaint and putative adverse action);

---

[9] Plaintiff was also reminded that "Vistaril was given initially but it should not be taken [long term]" after he first complained about the switch. (Ex. B. at 35).

11

*Rugg v. City of New York*, No. 18-CV-09762, 2019 WL 3242493, at *7 (S.D.N.Y. July 8, 2019) ("Standing alone, the three months is not enough to establish the necessary causal connection."). Plaintiff's protected speech, in the form of filing his grievance, was made on February 24, 2014, and Walsh's "adverse action," in the form of switching Plaintiff's prescription, was taken on May 21, 2014. (Powers Decl., Ex. D; Ex. A at 2). There is no explanation here why Walsh would wait nearly three months to retaliate,[10] and because there is no other evidence of retaliation in the record, the lack of temporal proximity is fatal to the causal connection element of Plaintiff's claim.

## IV. Personal Involvement by Bernstein

Finally, as to Bernstein, because there is no underlying First Amendment retaliation, Plaintiff's claim against Bernstein necessarily fails. Separately, however, the allegations against Bernstein are in no way sufficient to conclude that he had personal involvement in a constitutional violation. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (internal quotation removed)). Lastly, the law is clear that *respondeat superior* principles, such as alleged herein, do not create § 1983 liability. *See, e.g. Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint against Defendants is dismissed with prejudice in its entirety. The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 117; (ii) enter

---

[10] Notably, Walsh saw Plaintiff on *three* separate occasions between the filing of his grievance and the switching of his prescription (March 24, 2014, April 3, 2014, and May 8, 2014), each time continuing to allow him to use Vistaril. (Pltf. 56.1 at 21).

judgment in favor of Defendants; (iii) mail a copy of this Memorandum Opinion and Order to Plaintiff; (iv) and close this case.

**SO ORDERED**:

Dated: White Plains, New York
December 30, 2022

_____
Philip M. Halpern
United States District Judge